## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANGELA BORRELL, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 3:12-CV-02123 |
| | ) | |
| v. | ) | (Judge A. Richard Caputo) |
| | ) | |
| BLOOMSBURG UNIVERSITY, | ) | |
| GEISINGER MEDICAL CENTER, | ) | ELECTRONICALLY FILED |
| and ARTHUR F. RICHER and | ) | |
| MICHELLE FICCA in their individual | ) | |
| and official capacities, | ) | |
| | ) | |
| Defendants. | ) | |

**BRIEF IN SUPPORT OF DEFENDANTS GEISINGER
MEDICAL CENTER AND ARTHUR F. RICHER'S
FED. R. CIV. P. 12(B)(6) MOTION TO DISMISS**

Thomas S. Giotto
Pa. I.D. No. 39568
thomas.giotto@bipc.com
BUCHANAN INGERSOLL & ROONEY
One Oxford Centre, 20th Floor
301 Grant Street
Pittsburgh, PA  15219-1041
Phone: (412) 562-8800
Fax:    (412) 562-1041

## TABLE OF CONTENTS

I.    STATEMENT OF ALLEGED FACTS.......................................................1

II.   PROCEDURAL HISTORY..................................................................3

III.  QUESTIONS PRESENTED WITH SUGGESTED ANSWERS "YES".3

    1.    Should Count III against Richer be dismissed because Bloomsburg's Handbook is not a contract? ................................................................3

    2.    Should Count IV against Geisinger be dismissed because Geisinger's Policy is not a contract?................................................................3

    3.    Should Count I be dismissed against Geisinger and Richer because Borrell has not articulated constitutionally-protected interests?.....................3

    4.    Should Geisinger be dismissed from Counts I and II because private corporations cannot be held vicariously liable for its employees' acts and Borrell's claims against Geisinger are based on Richer's actions?..................3

    5.    Should Richer be dismissed from Counts I and II in his official capacity based on Eleventh Amendment immunity? ......................................3

    6.    Should Count II against Geisinger and Richer be dismissed because Borrell has not pled that she was treated differently from similarly-situated persons, *i.e.,* others who refused to take an immediate drug test? ..................3

IV.   LEGAL STANDARD ........................................................................4

V.    ARGUMENT.....................................................................................4

    1.    Borrell's Breach of Contract Claim Based on Bloomsburg's Handbook (Count III) Against Richer Fails as a Matter of Law Because Public University Student Handbooks Are Not Contracts. ......................................4

    2.    Borrell's Breach of Contract Claim (Count IV) Against Geisinger Fails as a Matter of Law Because its Policy Is Not a Contract and No Breach Is Alleged.........................................................................................6

    3.    Borrell's Due Process Claim (Count I) Should be Dismissed Because Borrell Has Not Articulated a Protectable Property or Liberty Interest........10

        **(a)**    Borrell Has No Protected Property Interest Owed Her by Geisinger or Richer. ........................................................................10

**(b)**    Borrell Failed to Allege Geisinger and/or Richer Deprived Her
of a Protected Liberty Interest. ............................................................14

4.    Counts I and II Should be Dismissed Against Geisinger Because
Private Corporations Cannot be Held Vicariously Liable Under §1983 .......16

5.    Borrell's Claims Against Richer in His Official Capacity Are Barred
by the Eleventh Amendment. ...................................................................18

6.    Borrell's Equal Protection Claim (Count II) Must Fail Because Borrell
Has Not Alleged She was Treated Differently Than Similarly-Situated
Individuals. ................................................................................................19

**VI.    CONCLUSION** .......................................................................................**22**

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009)..................................................................1, 4

*Beider v. W.R. Grace, Inc.*, 461 F. Supp. 1013 (E.D. Pa. 1978) .............................8

*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007)..................................... passim

*Bell v. Ohio State University*, 351 F.3d 240 (6th Cir. 2003) ...................................13

*Board of Regents of State Colleges v. Roth*, 408 U.S. 564 (1972) ....... 10, 13, 14, 15

*Boykin v. Bloomsburg Univ. of Pa.*, 893 F. Supp. 378, 394 (3d Cir. 1995)............18

*Ferrone v. Onorato*, 298 Fed. Appx. 138 (3d Cir. 2008) ................................. 11, 12

*Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009) ......................................4

*Hart v. Univ. of Scranton*, No. 3:11-CV-1576, 2012 WL 1057383 (M.D. Pa. March 28, 2012).......................................................................................................4

*Henderson v. Merck & Co., Inc.*, 998 F. Supp. 532 (E.D. Pa. 1998) ........................7

*Johnson v. Wenerowicz*, No. 10-5027, 2011 WL 1399809 (E.D. Pa. April 8, 2011) ......................................................................................................................19

*Lewis v. Kelchner*, 658 F. Supp. 358 (M.D. Pa. 1986).............................................19

*Meyer v. Nebraska*, 262 U.S. 390 (1923) ...............................................................14

*Miller v. City of Phila.*, 1996 WL 683827, Civ. No. 96-3758 (E.D. Pa. Nov. 25, 1996) ..................................................................................................................17

*Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978)........ 16, 17

*Morosetti v. Louisiana Land and Exploration Co.*, 564 A.2d 151 (Pa. 1989) ..........7

*Muscarella v. Milton Shoe Mfg. Co., Inc.*, 507 A.2d 430 (Pa. Super. Ct. 1986) .......................................................................................................................8

*Nordlinger v. Hahn*, 505 U.S. 1 (1992) ..................................................................20

iii

*Phillips v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008) ............................4, 20

*Powell v. Shopco Laurel Co.*, 678 F.2d 504 (4th Cir. 1982) ........................... 16, 17

*Richardson v. Charles Cole Memorial Hosp.*, 466 A.2d 1084 (Pa. Super. Ct. 1983) ........................................................................................................8

*Sanders v. Sears, Roebuck & Co.*, 984 F.2d 972 (8th Cir. 1993) ..................... 16, 17

*Startzell v. City of Phila.*, 533 F.3d 183 (3d Cir. 2008)................................... 20, 21

*Suber v. Guinta*, No. 10-cv-03156, 2012 WL 4510708 (E.D. Pa. Sept. 28, 2012) ......................................................................................................20

*Swartley v. Hoffner*, 734 A.2d 915 (Pa. Super. Ct. 1999) ...................................4, 5

*Sweeney v. St. Joseph's Hosp.*, 769 F. Supp. 747 (M.D. Pa. 1991) .....................7, 10

*Thomas v. Zinkel*, 155 F. Supp. 2d 408 (E.D. Pa. 2001) .........................................17

*Tran v. State Sys. of Higher Educ.*, 986 A.2d 179 (Pa. Commw. Ct. 2009) .........5, 6

*Unger v. Nat'l Residents Matching Program*, 928 F.2d 1392 (3d Cir. 1991) . 11, 12, .................................................................................................... 13, 14

*Village of Willowbrook v. Olech*, 528 U.S. 562 (2000).........................................20

*Vulcan*, 2012 WL 2572056, at *5; Doc. 21, ¶138 ..................................................10

*Watson v. Vulcraft Sales Corp.*, No. 2:12-cv-00628, 2012 WL 2572056 (W.D. Pa. July 2, 2012) .....................................................................................7

*Winslow v. Prison Health Servs., Inc.*, No. 1:08-0785, 2010 WL 571766 (M.D. Pa. Feb. 12, 2010) ...................................................................................17

*Woodson v. Prime Care Med., Inc.*, No. 12-cv-04919, 2013 WL 247372 (E.D. Pa. Jan. 23, 2013) ................................................................................ 20, 21

*Ying Jing Gan v. City of New York*, 996 F.2d 522 (2d Cir. 1993)..........................19

**Statutes**

42 Pa. Cons. Stat. §8521(b) ...................................................................................19

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ANGELA BORRELL,     )
          )
   Plaintiff,    )  Civil Action No. 3:12-CV-02123
          )
   v.      )  (Judge A. Richard Caputo)
          )
BLOOMSBURG UNIVERSITY,  )
GEISINGER MEDICAL CENTER, )  ELECTRONICALLY FILED
and ARTHUR F. RICHER and   )
MICHELLE FICCA in their individual )
and official capacities,    )
          )
   Defendants.   )

### BRIEF IN SUPPORT OF DEFENDANTS GEISINGER MEDICAL CENTER AND ARTHUR F. RICHER'S FED. R. CIV. P. 12(B)(6) MOTION TO DISMISS

Based on Rule 12(b)(6) of the Federal Rules of Civil Procedure and the two-step paradigm set forth in *Ashcroft v. Iqbal,* 556 U.S. 662, 678-79 (2009) and *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 556-57 (2007), Defendants Geisinger Medical Center ("Geisinger") and Arthur F. Richer ("Richer"), by and through their undersigned counsel, respectfully move to dismiss Plaintiff Angela Borrell's ("Borrell") Amended Complaint in its entirety with prejudice.

### I.  STATEMENT OF ALLEGED FACTS

Borrell's Amended Complaint arises from Geisinger's dismissal of Borrell out her nurse anesthesia clinical practicum at Geisinger.  At times relevant to this action, Borrell was enrolled in a Master's of Nursing program at Bloomsburg

University ("Bloomsburg"), a public university, pursuing a specialty in Certified Registered Nurse Anesthesia ("CRNA").  Doc. 21, ¶¶2 & 15.  Geisinger, a private corporation, contracts with Bloomsburg to provide a clinical setting for CRNA students to gain hands-on experience with Geisinger patients while under the supervision of licensed Geisinger nurse anesthetists.  Doc 21, ¶9, 10 & Ex. E.

Students performing clinical work at Geisinger are to comply with the provisions of its Drug and Alcohol Policy ("Policy").  Doc. 21, ¶13 & Ex. G, p. 2, 9.  Under that Policy, Geisinger may conduct drug testing based upon reasonable suspicion.  Doc. 21, Ex. G, p. 7.  The policy further provides that a refusal to be tested will result in termination.  Doc. 21, Ex. G, p. 5, #2.  Borrell was formerly employed as a nurse at Geisinger and was therefore familiar with its requirements. Doc. 21, ¶74.

On September 24, 2012, Richer, Director of the CRNA program, requested a meeting in his office with Borrell, where he asked her to submit to a drug test pursuant to Geisinger's Policy and Bloomsburg's Nursing Student Handbook ("Handbook").  Doc. 21, ¶¶17-21.  As the basis for reasonable suspicion, Richer cited a noticeable change in her appearance and demeanor.  Doc. 21, ¶18.  Borrell expressed reluctance to be tested.  Doc. 21, ¶¶19-31.  Richer informed her that being tested at a later date was not an option and advised her of the disciplinary consequences of refusal.  Doc. 21, ¶ 25 & Ex. B.  Borrell refused testing that day.

2

Doc. 21, ¶¶32 & Exs. B&E.  The following day, Richer and Michelle Ficca

("Ficca"), Bloomsburg's Department of Nursing Chairperson, advised Borrell she

was terminated from the CRNA program.  Doc. 21, ¶58 & Ex. B.

## II.    PROCEDURAL HISTORY

Borrell filed a Complaint on October 24, 2012, alleging denial of due

process, equal protection and breach of contract.  Doc. 1.  In February 2013,

Borrell, with new counsel, filed her Amended Complaint.  Doc. 21.  Last week,

Bloomsburg and Ficca filed a Motion to Dismiss the Amended Complaint in its

entirety.  Doc. 29.

## III.    QUESTIONS PRESENTED WITH SUGGESTED ANSWERS "YES"

1. Should Count III against Richer be dismissed because Bloomsburg's Handbook is not a contract?

2. Should Count IV against Geisinger be dismissed because Geisinger's Policy is not a contract?

3. Should Count I be dismissed against Geisinger and Richer because Borrell has not articulated constitutionally-protected interests?

4. Should Geisinger be dismissed from Counts I and II because private corporations cannot be held vicariously liable for its employees' acts and Borrell's claims against Geisinger are based on Richer's actions?

5. Should Richer be dismissed from Counts I and II in his official capacity based on Eleventh Amendment immunity?

6. Should Count II against Geisinger and Richer be dismissed because Borrell has not pled that she was treated differently from similarly-situated persons, *i.e.*, others who refused to take an immediate drug test?

## IV.    LEGAL STANDARD

Under *Twombly,* "it is no longer sufficient to allege mere elements of a cause of action; instead 'a complaint must allege facts suggestive of [the proscribed] conduct.'" *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). *See also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Since *Twombly* and *Iqbal*, the Third Circuit has held district courts must engage in a two-part analysis when considering a motion to dismiss. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the district court should separate the factual and legal elements of a claim and accept only the facts as true, disregarding legal conclusions. *Id.* at 210-11. Second, the court should determine if the remaining facts "show" entitlement to relief. *Id.* at 211.

## V.    ARGUMENT

**1.    Borrell's Breach of Contract Claim Based on Bloomsburg's Handbook (Count III) Against Richer Fails as a Matter of Law Because Public University Student Handbooks Are Not Contracts.**

Pennsylvania does not recognize a cause of action by a student against a public university based on alleged breach of a student handbook provision. Pennsylvania courts have expressly recognized such claims by students against private universities. *Swartley v. Hoffner*, 734 A.2d 915, 919 (Pa. Super. Ct. 1999). *See also Hart v. Univ. of Scranton*, No. 3:11-CV-1576, 2012 WL 1057383, at *3 (M.D. Pa. March 28, 2012) (Caputo, J.). However, Pennsylvania courts have

4

declined to extend that rationale to the public university context, instead holding a public university's student handbook is <u>not</u> a contract with its students. *Tran v. State Sys. of Higher Educ.*, 986 A.2d 179, 182-83 (Pa. Commw. Ct. 2009).

In *Swartley*, the Superior Court of Pennsylvania decided, as a matter of first impression, that a student may allege breach of contract against a private university. *Swartley*, 734 A.2d at 919. The court observed that the relationship between a private educational institution and its enrolled students is contractual, with written guidelines, policies and procedures issued by the school constituting contractual obligations. In so holding, the court noted the availability of constitutional claims against state-funded colleges and universities. *Id.* at 918.

One decade after *Swartley*, in a case with nearly identical facts to this case, the Commonwealth Court held that a public university's student handbook is <u>not</u> a contract between the university and its students. *Tran*, 986 A.2d at 182-83. Tran, a nursing student, alleged breach of contract against West Chester University, a public university, after it dismissed her from the clinical practicum of a nursing program for unsafe clinical practice. *Id.* at 180. Specifically, Tran alleged that the student handbook constituted a contract, and the university breached it by failing to follow the disciplinary procedures in the handbook. *Id.* The court rejected Tran's claim, noting, "[T]his Court has declined to construe the student handbook of a public university as a contract between the public university and the student." *Id.*

5

at 183 (citation omitted).  The court emphasized the distinction between public and private universities, reasoning that due process safeguards public universities' students' rights whereas students enrolled in private universities have contractual rights.  *Id.* at 182-83.

Based upon *Tran*, Borrell's breach of contract claim against Richer in Count III must fail as a matter of law.  Borrell alleges Bloomsburg's Handbook is a contract between Bloomsburg -- a public university -- and its students; that the handbook sets forth disciplinary procedures for Bloomsburg to follow; and Bloomsburg, Ficca and Richer breached the contract by not providing her with adequate notice that she was in violation of its terms.  Doc. 21, ¶¶122-124 & ¶¶127-130.  *Tran* is indistinguishable on its facts; thus, Bloomsburg's Handbook is not a contract.  Thus, Count III should be dismissed against Richer.

**2.     Borrell's Breach of Contract Claim (Count IV) Against Geisinger Fails as a Matter of Law Because its Policy Is Not a Contract and No Breach Is Alleged.**

Similarly, Count IV fails to allege an actionable claim against Geisinger because Geisinger's Policy does not amount to a contract.  Pennsylvania courts have consistently held that personnel policies are <u>not</u> contracts except in limited circumstances, which have not been alleged.

It is well-settled in Pennsylvania that employee handbooks and personnel policies are not contracts, unless they definitively state with sufficient clarity the

6

company's intention to be contractually bound.  *Sweeney v. St. Joseph's Hosp.*, 769 F. Supp. 747, 751 (M.D. Pa. 1991).  The Pennsylvania Supreme Court has emphasized:  "It is basic contract law that one cannot suppose, believe, suspect, imagine or hope that an offer has been made. … It is not sufficient to show only that [an employer] had a policy.  It must be shown they intended to offer it as a binding contract."  *Morosetti v. Louisiana Land and Exploration Co.*, 564 A.2d 151, 152-53 (Pa. 1989).  *See also Watson v. Vulcraft Sales Corp.*, No. 2:12-cv-00628, 2012 WL 2572056, at *5 (W.D. Pa. July 2, 2012).

The same analysis applies to individual personnel policies.  In *Henderson v. Merck & Co., Inc.*, 998 F. Supp. 532, 538 (E.D. Pa. 1998), the court rejected the plaintiff's claim that his former employer's alcohol treatment policy constituted a contract absent any oral or implied promises by the employer.  "A written personnel policy may serve as the basis for a cause of action for breach of a provision contained within it <u>if under all of the circumstances, the parties manifest an intent that it become a legally binding contract</u>."  *Id.* at 538 (emphasis added).  Similarly, a former employee's breach of contract claim based upon his former employer's drug testing practices has been held insufficient because: "Pennsylvania courts have consistently upheld a stringent standard in construing handbooks, manuals or other communications to be binding contracts."  *Watson*, 2012 WL 2572056, at *5.

7

Likewise, Pennsylvania courts have long recognized that a company's failure to follow its personnel policy does not create a cause of action for breach of contract. In *Richardson v. Charles Cole Memorial Hosp.*, 466 A.2d 1084, 1085 (Pa. Super. Ct. 1983), the plaintiff alleged breach of contract against her former employer, arguing that a provision in the handbook established a definite tenure of employment. The provision in question stated it was the employer's policy to provide continued employment to all employees whose work proved satisfactory. *Id.* at 1085. The Superior Court rejected that logic because failure to adhere to a company policy does not create a cause of action for breach of contract. *Id.* (citing *Beider v. W.R. Grace, Inc.*, 461 F. Supp. 1013, 1016 (E.D. Pa. 1978)). *See also Muscarella v. Milton Shoe Mfg. Co., Inc.*, 507 A.2d 430, 432 (Pa. Super. Ct. 1986).

Count IV of Borrell's Amended Complaint should be dismissed because Geisinger's Policy is not a contract. Nothing in the Policy could reasonably be construed as an offer to enter into a contractual relationship. In fact, the Policy explicitly rejects such a notion, stating, "Nothing in this policy is to be construed to create in any Geisinger Health System Employee any status other than as an employee at-will." Doc. 21, Ex. G, p. 8. Even though Borrell was not a Geisinger employee during her CRNA clinical, students are grouped with "employees" under the Geisinger policy and treated the same as employees. *Id.*, p. 2, 9. In other words, Geisinger applied the same guidelines related to drug and alcohol use and

8

testing to its employees and students alike. *Id.* To read the policy as vesting students with contractual rights would be to disregard its plain language and Geisinger's clear intent. Moreover, it would result in inequity, granting students such as Borrell greater rights -- contractual entitlements -- than Geisinger's own employees.

Indeed, while Borrell generally alleges Geisinger "failed to follow the terms and conditions of the [Policy] and further failed to properly advise Ms. Borrell of her rights," (Doc. 21, ¶141), such allegations are too vague to support a contract claim and contradict the Policy. Contrary to Borrell's vague allegations, the Policy expressly provides:

- All Geisinger employees (**which includes students**) and any Geisinger contractor "shall be deemed to have consented to testing as required by this Policy…" Doc. 21, Ex. G, p. 5 at 1;

- Any Geisinger employee (**which includes students**) "who refuses to cooperate in any aspect of the Drug and/or Alcohol testing process described in this Policy shall be subject to disciplinary action, including termination, for a first refusal…" *Id.*, p. 5 at 2;

- In order to assure compliance with the Hospital's prohibitions concerning Drug use, all employees (**which includes students**) and contractors "are required to cooperate in the substance abuse testing procedures…" *Id.,* p. 7 at 1.

Borrell's claim fails for the additional reason that there was no breach. The policy requires cooperation with the testing procedures and action can be taken for

9

refusal to cooperate with testing.[1]  *Id.*, p. 5 at 2.  Borrell concedes she did not

consent to be drug tested the day of the request.  Doc. 21, ¶¶32-34 & Exs. B&E.

**3.      Borrell's Due Process Claim (Count I) Should be Dismissed Because Borrell Has Not Articulated a Protectable Property or Liberty Interest.**

To allege a §1983 claim against Geisinger and Richer, Borrell must allege a

specific protectable property or liberty interest owed by them.   An individual's

right to procedural due process "appl[ies] only to the deprivation of interests

encompassed by the Fourteenth Amendment's protection of liberty and property."

*Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 569 (1972).  Borrell fails

to identify any such interest.  In fact, Borrell's vague allegations do not articulate

what property or liberty entitlements are at issue.  As set forth below, Borrell lacks

a property interest in Geisinger's Policy and Bloomsburg's Handbook, and has no

liberty interest in continuing in the CRNA program.

**(a)      Borrell Has No Protected Property Interest Owed Her by Geisinger or Richer.**

"To have a property interest in a benefit, a person clearly must have more

than an abstract need or desire for it. …[She] must, instead, have a legitimate claim

of entitlement to it." *Roth*, 408 U.S. at 577.  Moreover, not every contract gives

rise to a property interest protected under the Fourteenth Amendment.  *Id.* at 599;

---

[1] Even if Borrell could show that the Policy was a contract, she has failed to identify any specific provision allegedly breached by Geisinger, as required by Pennsylvania law. *Sweeney*, 769 F. Supp. at 751; *Vulcan*, 2012 WL 2572056, at *5; Doc. 21, ¶138 (making vague reference to disciplinary procedures).

10

*Ferrone v. Onorato*, 298 Fed. Appx. 138, 140 (3d Cir. 2008) (unpublished) ("We have here not a matter for federal constitutional importance, but a commonplace breach of contract dispute clothed in federal question fleece.").  Thus, under *Twombly*, discarding all non-specific legal conclusions, Borrell must allege facts that Geisinger and/or Richer entered into:  (1) a contract conferring a protected status on Borrell involving extreme dependence and/or permanence or (2) a contract that may only be terminated for cause.  *Unger v. Nat'l Residents Matching Program*, 928 F.2d 1392, 1399 (3d Cir. 1991).  Borrell fails to do so.  Instead, Borrell appears to allege that her property interest arises out of Geisinger's Policy and/or Bloomsburg's Handbook -- neither of which are contracts.

### (i)    Geisinger's Policy

First, Borrell does not clearly identify the contract or provision she claims Geisinger violated, causing it to be liable under §1983.  However, Borrell appears to base her claim upon Geisinger's application of its Policy.  Doc. 21, ¶¶94-98.  Borrell alleges that Geisinger "has a pattern or practice of diverting from [its] own procedures…related to drug testing" and it "selectively and capriciously enforced [its] procedures… ."  Doc. 21, ¶¶97-98.  To the extent Borrell relies upon Geisinger's Policy, her due process claim is insufficient because the Policy is not a binding, enforceable contract, as detailed above.

11

Even assuming the Policy was a contract (which it is not) and Geisinger was a state actor (which it is not), Borrell's allegations fail to show she has a constitutionally-protected property right in Geisinger's application of its Policy. Geisinger has discretion, as described within its Policy, to apply its "standards and procedures" and "general guidelines" as it sees fit. Doc. 21, Ex. G. Specifically, Geisinger has discretion as to: (1) its reaction to any person's refusal to cooperate with testing (*Id.*, p. 5, at 2-4); (2) when to conduct tests (*Id.*, p. 7, at 1), and (3) what types of test to use (*Id.*, p. 7, at 2). Based upon that discretion, the Policy "does not convey a property interest protected by the Fourteenth Amendment." *Ferrone*, 298 Fed. Appx. at 140 (affirming dismissal of Ferrone's claim to constitutionally-protected property interest in discretionary loan agreement).

Third, the Policy does not confer a protected status on Borrell or constitute a contract that may only be terminated for cause. *Unger*, 928 F.2d at 1399. Borrell fails to identify any such language in the Policy. The Policy does not confer any status -- other than at-will -- even on its employees. Doc. 21, Ex. G, p. 8. It details Geisinger's requirements on persons performing work within Geisinger, including cooperation with drug-testing and its ability to terminate those who fail to comply. *Id.*, p. 5 at 1-2. Consequently, Borrell's vague allegations fail to identify how or why Geisinger's Policy creates a Fourteenth Amendment right to due process, and Count I should be dismissed with prejudice as to Geisinger and Richer.

**(ii)    Bloomsburg's Handbook**

Like the Policy, the Handbook (which is not a contract) fails to confer a property interest to Borrell. In *Bell v. Ohio State University*, 351 F.3d 240, 248 (6th Cir. 2003), a medical student brought a §1983 claim after she was involuntarily withdrawn from the medical school. The Sixth Circuit noted the plaintiff failed to establish a protectable property interest in her continued education based upon her reliance on the student handbook and a Dean's statements that the school would do everything it could to help students pass. *Id.* at 248-250. It found this was not enough to establish entitlement to a benefit, as required for a §1983 claim. *Id. See also Unger*, 928 F.2d at 1397 (holding a unilateral expectation to participate in a residency program was "insufficient to constitute a property interest protected under the Fourteenth Amendment"). Put simply, policies alone are not constitutional entitlements.

Like the student in *Bell*, Borrell fails to identify any provision in Bloomsburg's Handbook which provides her with an <u>entitlement</u> to continued participation in the CRNA Program. Nor could she, as the Handbook makes no guarantees. Borrell's participation in the CRNA Program is not a benefit to which she is entitled -- she had only an "abstract desire" or "unilateral expectation," which the Fourteenth Amendment does not protect. *Roth*, 408 U.S. at 577.

13

Because Borrell fails to identify any constitutionally-protected property interest owed to her by Geisinger or Richer, Count I should be dismissed.

### (b)   Borrell Failed to Allege Geisinger and/or Richer Deprived Her of a Protected Liberty Interest.

A liberty interest entails the "right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge…and generally to enjoy those privileges long recognized at common law as essential to the orderly pursuit of happiness by free men." *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923). The Third Circuit has a two-step inquiry for determining if a claim alleges a due process violation based on a liberty interest: (1) are the asserted individual interests encompassed within the Fourteenth Amendment's protection, and (2) if so, what procedures constitute due process? *Unger*, 928 F.2d at 1395.

Here, Borrell's desire to continue the CRNA Program does not entitle her to relief. In *Unger*, the Third Circuit recognized that while discontinuation of a student's ability to participate in a graduate program "no doubt inconvenience[s]" the student, such inconvenience does not result in a deprivation of a protected liberty interest. *Id.* at 1396. Similarly, the Supreme Court held a non-tenured faculty member who was not rehired by a state university at the end of a one-year contract was not deprived of a "liberty" and "it stretches the concept too far" because he could simply seek another job. *Roth*, 408 U.S. at 575.

14

Like the non-tenured professor in *Roth* who could seek another job and the graduate student in *Unger* who could attend an alternate graduate program, Borrell fails to allege any facts why she cannot and is not pursuing her clinical requirements at another facility, obtaining another advanced nursing degree through Bloomsburg, or pursuing her degree at another university. *Id.* There are no allegations of Geisinger or Richer precluding her from doing so.

Further, Borrell makes non-specific claims that "Defendants disseminated a false and defamatory impression" and "have made it publicly known that [she] was expelled due to failure to comply with their drug testing policy" in an attempt to assert that she has been stigmatized and her standing or associations damaged. Doc. 21, ¶¶70-78. First, statements about Borrell's failure to comply with Geisinger's Policy are true as conceded in the Amended Complaint: Geisinger and Richer requested Borrell take a drug test consistent with Geisinger's Policy, and she refused to be tested that day. Doc. 21, ¶¶18-34 & Exs. B & E. Second, Borrell's vague allegations are insufficient under *Twombly*, failing to allege which defendant made what public statement to whom.

In sum, Borrell fails to allege facts sufficient to establish a protectable liberty interest or how Geisinger or Richer deprived her of due process associated with any such interest. For these reasons, Count I should be dismissed in its entirety against Geisinger and Richer.

15

**4.** **Counts I and II Should be Dismissed Against Geisinger Because Private Corporations Cannot be Held Vicariously Liable Under §1983.**

Borrell names Geisinger as a Defendant in Counts I and II, alleging, "[A]s a partner and/or joint venturer with state actor Bloomsburg… [Geisinger] acted under color of state law." Doc. 21, ¶85. Even accepting Borrell's allegations are true and assuming Geisinger is a state actor,[2] Borrell failed to plead cognizable claims against Geisinger because private corporations acting under color of state law are not liable for violations of §1983 under a *respondeat superior* theory, and Borrell's claims against Geisinger are premised solely on Richer's actions.

In *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691-92 (1978), the Supreme Court held municipalities cannot be liable for acts of its employees under §1983 because the statute evidences Congressional intent to exclude vicarious liability. Numerous Circuit Courts have applied the same rationale to private corporations, including the Fourth Circuit in *Powell v. Shopco Laurel Co.*, 678 F.2d 504, 506 (4th Cir. 1982) ("We see [*Monell's*] holding as equally applicable to the liability of private corporations."). *See also Sanders v. Sears, Roebuck & Co.*, 984 F.2d 972, 975-76 (8th Cir. 1993) ("Sears 'cannot be

---

[2] For purposes of this Brief, Geisinger does not address whether it was acting under color of state law, but expressly reserves the right to argue that it is not a state actor at a later date.

held liable under §1983 on a *respondeat superior* theory.'") (citing *Monell*, 436 U.S. at 691).

Although the Supreme Court and Third Circuit have not addressed the issue, Pennsylvania district courts have adopted *Powell*, refusing to hold private corporations liable under *respondeat superior*. *Miller v. City of Phila.*, 1996 WL 683827, Civ. No. 96-3758, at *3-4 (E.D. Pa. Nov. 25, 1996). Rather, for a private corporation acting under color of state law to be liable under §1983, the plaintiff must allege the corporation established and maintained a policy, practice or custom that directly caused her constitutional harm. *Miller*, 1996 WL 683827, at *4; *Thomas v. Zinkel*, 155 F. Supp. 2d 408, 412 (E.D. Pa. 2001) (dismissing prisoner's §1983 claim against private corporation that contracted with the state because prisoner failed to identify a corporate policy, practice or custom that caused his injury); *Winslow v. Prison Health Servs., Inc.*, No. 1:08-0785, 2010 WL 571766, at *5-6 (M.D. Pa. Feb. 12, 2010) (granting corporation's summary judgment motion because plaintiff identified no unconstitutional policy). *See also Sanders*, 984 F.2d at 975 (affirming dismissal of §1983 claim because plaintiff did not plead Sears had an unconstitutional policy or custom).

Borrell has not alleged that Geisinger established and maintained a policy, practice or custom that deprived her of due process or equal protection. Rather, Borrell alleges Richer's actions directly caused her injuries. In fact, Borrell asserts

17

it was Richer's alleged <u>deviation</u> from the procedures of Geisinger's Policy that allegedly deprived Borrell of her constitutional rights -- not Geisinger's establishment or maintenance of the policy.  *See* Doc. 21, ¶¶48 & 52-57.  Although Borrell avers, "Upon information and belief, defendants have a pattern or practice of diverting from their own procedures, policies, and protocols related to drug testing and student discipline," such a vague, conclusory allegation falls short of *Twombly's* pleading standard, as she asserts no supporting facts.  *See* Doc. 21, ¶97. Not only does Borrell fail to allege any facts to support that conclusion, her assertion that Defendants had a "pattern or practice" of not following their procedures, policies and protocols contradicts her claim that she alone was singled out for unfavorable treatment, as she alleges in her "class of one" equal protection claim (Count II).

Borrell's factual allegations against Geisinger in Counts I and II are premised <u>solely</u> on Geisinger's employment of Richer.  Because Borrell cannot hold Geisinger vicariously liable for the acts of an employee, Counts I and II should be dismissed against Geisinger.

5.      **Borrell's Claims Against Richer in His Official Capacity Are Barred by the Eleventh Amendment.**

Sovereign immunity protects the Commonwealth and its agencies against §1981 and §1983 claims.  *Boykin v. Bloomsburg Univ. of Pa.*, 893 F. Supp. 378, 394 (3d Cir. 1995) (granting summary judgment to university on §1981 claims on

18

the basis of sovereign immunity).  Pennsylvania has not waived its Eleventh

Amendment immunity to suit in civil rights cases.  *See* 42 Pa. Cons. Stat.

§8521(b); *Johnson v. Wenerowicz*, No. 10-5027, 2011 WL 1399809, at *4 (E.D.

Pa. April 8, 2011).  Bloomsburg is an arm of the state, entitled to the protections of

the Eleventh Amendment.  *Lewis v. Kelchner*, 658 F. Supp. 358, 360 (M.D. Pa.

1986).

The Eleventh Amendment also protects state employees, acting in the scope

of their duties, sued in their official capacities against §1983 claims.  *See Ying Jing*

*Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir. 1993); *Johnson*, 2011 WL

1399809, at *4 ("Individual state employees sued in their official capacity are also

entitled to … immunity").  Because Borrell has named Richer in his official

capacity as Director of Bloomsburg's CRNA Program, all claims against Richer in

his official capacity are claims against the state and are barred by the Eleventh

Amendment, requiring dismissal.

**6.     Borrell's Equal Protection Claim (Count II) Must Fail Because Borrell Has Not Alleged She was Treated Differently Than Similarly-Situated Individuals.**

In Count II, Borrell alleges all Defendants violated the Fourteenth

Amendment's Equal Protection clause when she was dismissed from the CRNA

Program because she was singled out for unfavorable treatment.  The Supreme

Court and the Third Circuit have recognized a "class of one" theory, under which a

19

plaintiff may allege equal protection violations if she asserts:  (1) the defendant treated her differently from others similarly situated; (2) the defendant did so intentionally; and (3) there was no rational basis for the difference in treatment. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564-65 (2000); *Phillips*, 515 F.3d at 243-45 (upholding district court's dismissal of equal protection claim because plaintiff failed to plead <u>facts</u> to support her allegation that decedent was treated differently from similarly-situated persons).

Individuals are similarly situated when they are alike in all relevant aspects. *Startzell v. City of Phila.*, 533 F.3d 183, 203 (3d Cir. 2008) (citing *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992)).  Determining whether a person is "similarly situated" to another is a case-by-case, fact-specific inquiry.  *Suber v. Guinta*, No. 10-cv-03156, 2012 WL 4510708, at *10 (E.D. Pa. Sept. 28, 2012) (slip op.). Borrell's equal protection claim should be dismissed because she pleads <u>no</u> facts that she was treated differently than others <u>similarly</u> <u>situated</u>, *i.e.*, students who refused to consent to immediate drug testing.

In *Woodson v. Prime Care Med., Inc.*, No. 12-cv-04919, 2013 WL 247372, at *1-2 (E.D. Pa. Jan. 23, 2013), Woodson filed an equal protection claim after prison officials fired him from his prison job based on a policy prohibiting individuals with history of using certain drugs from food service work.  The court dismissed his claim with prejudice because he could not articulate the "similarly

20

situated" element.  *Woodson*, 2013 WL 247372, at \*6.  In his complaint, Woodson alleged he was treated worse than employees who were not similarly-situated, *i.e.*, intravenous drug users and/or employees with communicable diseases were treated more favorably.  *Id.* at \*2.  Accepting Woodson's allegations as true, the court found that Woodson claimed <u>not</u> to be similarly situated to the other inmates in <u>any</u> relevant aspect.  *Id.*  ("Woodson strongly disavows being 'similarly situated' to those inmates… .  From [his] statements, it appears that Woodson is in the exact opposite position as those other inmates.") (citing *Startzell*, 533 F.3d at 203).  Like Woodson, Borrell alleges she is <u>not</u> similarly-situated to others under the Policy.

Borrell alleges Geisinger and Richer did not dismiss from the CRNA program a student with a drug addiction who stole narcotics, whereas Borrell was not a drug user, did not steal narcotics, and <u>was</u> dismissed from the CRNA Program.  Doc. 21, ¶¶79-81.  Her admission that she was wholly different from her comparator is fatal to her claim.  By disavowing any similarity to the individual she asserts was treated more favorably, Borrell's equal protection claim fails at this stage for reasons identical to Woodson's claim.

Most significantly, Borrell fails to allege the other student refused to be drug tested, which is the <u>only</u> relevant aspect in which she would have to be similarly-situated to that student.  Because Borrell has not properly alleged she was treated

21

differently than similarly-situated individuals -- students who refused to consent to drug testing under the terms of the Policy -- Count II should be dismissed.

## VI.   CONCLUSION

For the reasons above, Defendants Geisinger and Richer respectfully request this Court dismiss Borrell's Amended Complaint in its entirety.

Respectfully submitted,

/s/ Thomas S. Giotto
Thomas S. Giotto
Pa. I.D. No. 39568
thomas.giotto@bipc.com
BUCHANAN INGERSOLL & ROONEY
One Oxford Centre, 20th Floor
301 Grant Street
Pittsburgh, PA  15219-1041
Phone: (412) 562-8800
Fax:    (412) 562-1041

Dated:  April 30, 2013          Attorney for Defendants
Geisinger Medical Center
and Arthur F. Richer

## <u>CERTIFICATE OF COMPLIANCE PURSUANT<br>TO LOCAL RULE 7.8(b)(2)</u>

Pursuant to Local Rule 7.8(b)(2), it is hereby certified that Defendants Geisinger Medical Center and Arthur F. Richer's Brief In Support of Fed. R. Civ. P. 12(b)(6) Motion to Dismiss Plaintiff's Amended Complaint contains 4,961 words (exclusive of all captions, table of contents, table of citations, signature lines and certificates), according to the Microsoft® Word 2010 word processing system used to prepare it, and that the Brief therefore complies with Local Rule.

By: */s/ Thomas S. Giotto*
Thomas S. Giotto

23