**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ANGELA BORRELL,<br><br>    Plaintiff,<br><br>    v.<br><br>BLOOMSBURG UNIVERSITY,<br>GEISINGER MEDICAL CENTER, and<br>ARTHUR F. RICHER and MICHELLE<br>FICCA in their individual and official<br>capacities,<br><br>    Defendants. | CIVIL ACTION NO. 3:CV-12-2123<br><br>(JUDGE CAPUTO) |

**MEMORANDUM**

Before me are two motions *in limine* filed by Plaintiff Angela Borrell ("Borrell") (Docs. 158; 159), and two motions *in limine* filed by Defendants Geisinger Medical Center ("Geisinger") and Arthur Richer ("Richer") (collectively, "Geisinger Defendants"). (Docs. 195; 197.)

**Background**

The factual background of this action is set forth in detail in the October 21, 2014 Memorandum resolving the parties' cross-motions for summary judgment. *See Borrell v. Bloomsburg Univ.*, - - - F. Supp. 3d - - -, 2014 WL 5365322 (M.D. Pa. Oct. 21, 2014). For purposes relevant here, it is sufficient to note that Borrell commenced this action after she was dismissed as a student from Bloomsburg University and Geisinger's collaborative Nurse Anesthesia Program ("NAP") in September 2012 for refusing to submit to a drug test. Because Borrell was deprived of a property interest without procedural due process when she was dismissed from the NAP, summary judgment as to liability was granted in Borrell's

favor on her procedural due process property interest claim.[1] Trial on Borrell's claims for damages for the deprivation of her due process rights is scheduled to commence on June 22, 2015.

**Discussion**

As stated, both Borrell and Geisinger Defendants have filed motions *in limine*. The motions *in limine* filed by Borrell will be addressed first.

**1. Motion *in Limine* to Exclude Certain Irrelevant Evidence (Doc. 158)**

In her first motion *in limine*, Borrell seeks to exclude evidence or argument about: (A) her alleged possession or use of drugs or alcohol; (B) the alleged possession or use of drugs or alcohol by her boyfriend; (C) the alleged possession or use of drugs or alcohol by her mother or sister; (D) the possession or use of drugs or alcohol by other individuals in her presence; (E) her father's criminal record or that he has been incarcerated; (F) her reference to students she believed fabricated a story about her use of drugs as "whores"; (G) that other students, given a hypothetical about whether they would have taken drug tests in similar circumstances, would have submitted to the test; and (H) her alleged communications about student obligations to follow the drug and alcohol policy of Geisinger, Bloomsburg, or the NAP. (Doc. 158, ¶ 4.) Defendants jointly oppose Borrell's motion to exclude this evidence. (Doc. 180.) The motion *in limine* will be granted in part and deferred in part.

With respect to category (A), Defendants contend that pursuant to *Carey v. Piphus*, 435 U.S. 247, 98 S. Ct. 1042, 55 L. Ed. 2d 252 (1978), Borrell is not entitled to recover compensatory damages occasioned by her dismissal from the NAP because she would

---

[1] Conversely, summary judgment was granted in favor of Geisinger Defendants and Defendant Michelle Ficca (collectively, "Defendants") on Borrell's equal protection and stigma-plus claims. *See Borrell*, 2014 WL 5365322, at *37.

have been dismissed from the program for refusing to take the drug test even if she was afforded all process due.[2] Thus, Defendants conclude that the information they had at the time Borrell was requested to submit to a drug test is relevant under *Carey*. Because Borrell's alleged use or possession of drugs may bear on that issue, a ruling on the admissibility of this evidence will be deferred at this time.

Similarly, the admissibility of category (B) evidence, the alleged use or possession of drugs by Borrell's boyfriend, will be deferred to the time of trial. Defendants argue that at the time Borrell was requested to submit to a drug test they had information that her boyfriend was a user and supplier of drugs, which formed their factual basis for requesting the drug test. (Doc. 63, Ex. B., *Wands Decl.*, ¶ 14.) Whether this evidence is admissible will be determined at trial.

The evidence in category (C), use or possession of drugs or alcohol by Borrell's mother and sister, and category (D), use or possession of drugs or alcohol by others in her presence, will be excluded. Unlike the evidence in category (B), Defendants have not identified any evidence that use or possession of drugs or alcohol by her mother, sister, or others in her presence helped form the factual basis for the drug test request. This evidence is therefore not relevant to any issues in the case and will be excluded.

Defendants argue that they should be permitted to present evidence in category (E) pertaining to Borrell's father because it provides an independent source to explain any emotional distress suffered by Borrell. The admissibility of this evidence as it relates to

---

[2] If Defendants establish that Borrell would have been dismissed from the NAP even if she was afforded all process due, she may still recover compensatory damages if she "convince[s] the trier of fact that [s]he actually suffered distress because of the denial of procedural due process itself." *Carey*, 435 U.S. at 263, 98 S. Ct. 1042; *accord Fraternal Order of Police, Lodge No. 5 v. Tucker*, 868 F.2d 74, 81 n.9 (3d Cir. 1989) (allocating the defendants the burden of proving that the plaintiffs would have been discharged had sufficient process been provided).

Borrell's claim for distress damages will be determined at trial.

Borrell's motion to exclude evidence in category (F) regarding her description of others as "whores" or other pejorative terms will be granted. Defendants contend these remarks are relevant to her damages claim for loss of earnings as they bear on her "professionalism and fitness" for the practice of nurse anesthesia. (Doc. 180, 13.) Defendants have not identified any evidence that these remarks have an impact on Borrell's earnings capacity or her ability to practice as a nurse anesthetist. These remarks are irrelevant, add nothing to the case, and will be excluded at trial.

In category (G), Borrell seeks to exclude evidence that other students in a hypothetical situation similar to that she faced would have submitted to a drug test. This evidence is irrelevant and will be excluded. Whether or not other students would have taken a drug test in similar circumstances is not probative of any issues in this case. Other students' willingness to initially submit to a drug test and/or what they would have done in similar circumstances has no bearing on whether additional process would have changed the outcome for Borrell. Likewise, that other students would have taken the drug test in a similar scenario is not relevant to the issue of punitive damages. The motion to exclude evidence in category (G) will be granted.

Lastly, the motion to exclude evidence of Borrell's communications about Defendants' policies, category (H), will be deferred to the time of trial.

**2.    Motion *in Limine* to Preclude Evidence or Argument that Defendant Geisinger Terminated Other Nurses Who Refused to Submit to Drug Tests (Doc. 159)**

Borrell's second motion *in limine* seeks to preclude evidence that Geisinger terminated four other nurses that refused to submit to drug tests. Among other arguments, Borrell asserts that evidence of the termination of these nurses should be excluded because they were not entitled to due process before they were discharged. (Doc. 161, 4-5.) Borrell explains that whereas she was entitled to procedural protections before her dismissal from

4

the NAP as a result of Geisinger's collaboration and participation in joint activity with Bloomsburg, the other nurses were employed solely by Geisinger in positions that did not involve any joint activity between Geisinger and a state actor. (Doc. 184, 6-7.) As such, since Geisinger was not legally obligated to provide these nurses with any process at all (and did not provide such process), Borrell argues that the termination of these nurses has no bearing on whether she would have benefitted from additional process. (*Id*.)

Defendants jointly oppose Borrell's motion. (Doc. 181.) Specifically, Defendants argue that the regular consequences of refusing a drug test will be probative to the jury's determination of whether sufficient process would have excused Borrell. (*Id*. at 8.)

Borrell's motion will be granted. This case is about Borrell's rights under the Due Process Clause and whether she would have been dismissed from the NAP even if she had been afforded all process due. The other nurses, however, were not protected by similar procedural safeguards in the course of their employment with Geisinger, and their terminations could and did occur without any procedural protections. Thus, as these four nurses were discharged under circumstances that did not implicate due process concerns, their terminations are not probative of whether Borrell would have been dismissed from the NAP even if she was afforded the procedural protections required by the Due Process Clause. The evidence that Geisinger terminated four nurses for refusing to submit to a drug test will be excluded at trial.

3. **Motion *in Limine* to Exclude Evidence of Communications to or from Borrell's Lost Phone (Doc. 195)**

Geisinger Defendants' first motion *in limine* seeks to exclude evidence of communications to or from Borrell's lost phone. According to Geisinger Defendants, although they requested ESI from Borrell's cell phone, they were unable to retrieve this information because the phone was lost in the mail when she attempted to send it to her counsel. Prior to sending her phone to counsel, Borrell did not back up the ESI on her

5

phone. And, when she sent the phone to counsel, Borrell did not track the phone or send it return receipt requested. Geisinger Defendants contend that Borrell's failure to take reasonable measures to preserve relevant evidence warrants the imposition of sanctions. Geisinger Defendants request that Borrell be prohibited from introducing evidence relating to communications to or from her phone, but that they be permitted to introduce evidence from her phone, be allowed to offer evidence regarding the loss of the phone, and be permitted to argue to the jury for an adverse inference based on her handling of the phone.

In opposition to Geisinger Defendants' motion, Borrell sets forth in detail the circumstances surrounding the lost phone. Borrell states that after she purchased a new phone (and the information from her prior phone was transferred to the new phone), she sent the old phone to counsel. That phone, however, was lost in the mail. Thereafter, Borrell agreed to have Geisinger Defendants' vendor of choice transfer and copy the information that had been transferred from her old phone to her new phone. Although the parties agreed that the data from Borrell's phone would be preserved, the parties disputed how the data would be provided to counsel from the vendor. (Doc. 203, 4 and Exs. D and E.) Counsel for Geisinger Defendants subsequently contacted the vendor, stating that "[a] court order will be entered shortly that no party (or their counsel) receives any data from the iphone until the current ESI protocol issues are resolved." (*Id*. at Ex. G.) An Order to that effect was entered on December 5, 2013. (Doc. 57.) That Order further provides that the parties were not precluded from raising any subsequent motions related to the lost phone. (*Id*.)

While the discoverability of certain information was addressed in April 2014, (Docs. 74; 75), the information collected by the vendor has never been reviewed. (Doc. 203, 5.) The reason, as stated by Borrell, is that Defendants never permitted Borrell's counsel to review and produce the relevant information or, alternatively, to seek a Court order

6

authorizing a different process for the production of such information. (*Id*.)

In determining whether sanctions are an appropriate response to spoliation, courts in the Third Circuit consider: "(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future." *Gentex Corp. v. Sutter*, 827 F. Supp. 2d 384, 390-91 (M.D. Pa. 2011) (quoting *Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 79 (3d Cir. 1994)).

Geisinger Defendants' motion will be denied. Borrell has little, if any, fault for the lost phone. Although Geisinger Defendants suggest Borrell bears fault for failing to back up her phone or track the package when she sent the phone to her counsel, a strong degree of fault exists where "there has been an actual suppression or withholding of the evidence," as opposed to where "the document or article in question has been lost or accidentally destroyed." *Brewer v. Quaker State Oil Refining Corp.*, 72 F.3d 326, 334 (3d Cir. 1995). This is such a case where the party lacks fault for the accidental loss of evidence. Moreover, any prejudice Geisinger Defendants suffer from the loss of the phone is overstated. Information from Borrell's old phone was transferred to her new phone, copied by a vendor, and available for review in this litigation. Nevertheless, Geisinger Defendants never sought to obtain access to that information, nor did they agree to allow Borrell's counsel to review that information prior to production. Geisinger Defendants' request to prevent Borrell from presenting evidence of communications to or from her lost phone will be denied.

4. **Motion *in Limine* to Exclude Certain Evidence (Doc. 197)**

Geisinger Defendants' second motion *in limine* seeks to exclude: (i) testimony and evidence concerning Elizabeth Peterman and the nurse who admitted to stealing narcotics

in the 1980s; (ii) testimony from previously undisclosed witnesses; (iii) evidence of financial information for Geisinger Health System; (iv) evidence of marijuana use by Richer and Brion Lieberman; (v) evidence of allegations that Lindsey Reilly smoked marijuana; and (vi) comments from Borrell's counsel concerning the absence of economic evidence/expert testimony. (Doc. 198.) Borrell timely filed a brief in opposition to the motion *in limine*. (Doc. 204.)

With respect to evidence concerning Elizabeth Peterman,[3] Geisinger Defendants argue that unlike Borrell, Peterman's termination proceedings followed from a charge of unsuitability. Geisinger Defendants contend that these two cases involve different conduct, policies, and exigencies, and allowing Borrell to present evidence about Peterman would result in a mini-trial to demonstrate the dissimilarity between the cases. (Doc. 198, 4.) Conversely, Borrell argues that the testimony is directly relevant because it will "illustrate due process procedures and for the jury to see and understand the power of due process." (Doc. 204, 3.)

Like the dismissal of the four nurses from their employment with Geisinger, Peterman's termination proceedings do not bear on the issues remaining in this litigation. Delving into the circumstances of Peterman's termination proceedings, which involved discharge for different conduct and implicated different policies, is not probative to the question of whether Borrell would still have been dismissed from the NAP had she been afforded all process due. Moreover, the jury will be instructed on the meaning and requirements of due process, as well as the procedures Defendants were obligated to provide prior to dismissing her from the NAP. Thus, admitting evidence relating to Peterman's termination proceedings to illustrate or explain due process is not warranted.

---

[3] Borrell indicates that she does not intend to present evidence of the other student referenced by Geisinger Defendants. (Doc. 204, 3.)

Geisinger's request to exclude testimony and evidence concerning Peterman's termination proceedings will be granted.

Next, Geisinger Defendants request that eight witnesses be excluded from testifying at trial because they were not disclosed until May 13, 2015.[4] Under Federal Rule of Civil Procedure 26, "[a] party is required to disclose the names of witnesses that may be called to testify at trial. Failure to do so will preclude the party's use of those witnesses, unless such failure was substantially justified or harmless. " *Schmidt v. Mars, Inc.*, 587 F. App'x 12, 16 (3d Cir. 2014) (citing Fed R. Civ P. 26 and 37(c)(1)). The Third Circuit has held that "even under Rule 37, the imposition of sanctions for abuse of discovery . . . is a matter within the discretion of the trial court." *Newman v. GHS Osteopathic, Inc.*, 60 F.3d 153, 156 (3d Cir. 1995) (citations and quotations omitted). In evaluating whether a trial court has abused its discretion, the Third Circuit looks to several factors:

> (1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified, (2) the ability of that party to cure the prejudice, (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or other cases in the court, and (4) bad faith or wilfulness in failing to comply with the district court's order.

*Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 719 (3d. Cir.1997). The "importance of the excluded testimony" should also be considered. *Id*.

Geisinger Defendants' motion to exclude these witness will be denied. Three of the witnesses are Geisinger witnesses. There is no prejudice against Geisinger Defendants as to these witnesses because they are available to counsel for preparation prior to trial. Moreover, these witnesses will not interrupt or disturb this case or others in this court. There is also nothing in the record suggesting that Borrell acted in bad faith, and the testimony from these witnesses is important to issues remaining in the case, such as

---

[4] Borrell has withdrawn her sister Shawna Borrell as a witness because she is unavailable to testify. (Doc. 204, 5.)

Borrell's claim for punitive damages.

As to the remaining witnesses, they will not be excluded because the failure to identify them was harmless. Although Geisinger Defendants contend that they have "no practical opportunity to cross examine" these witnesses, they are represented by experienced trial lawyers that are more than capable of conducting a cross examination at trial of witnesses they have not previously deposed. Furthermore, in view of the anticipated testimony of these witnesses, Geisinger Defendants will not be prejudiced if those witnesses testify at trial. Likewise, permitting these witnesses to testify will not disrupt the flow of trial, and there has been no evidence presented that Borrell acted in bad faith. Their testimony is also pertinent to describe any changes in Borrell that resulted from the events at issue. In the exercise of discretion, these witnesses will be allowed to testify at trial.

As to the admissibility of financial information of Geisinger Health System, this issue will be resolved at trial.

Geisinger Defendants' request to exclude use of marijuana by Richer and Lieberman will be granted because this evidence is not probative to any issues in this litigation. Conversely, as to allegations of drug use by Lindsey Reilly, it is not clear on the record whether this evidence is relevant to any issues for trial and/or to Reilly's decision to report Borrell's conduct to Brenda Wands. The admissibility of this evidence will be determined at the time of trial.

Lastly, Geisinger Defendants seek to preclude Borrell from arguing or commenting to the jury about the lack of lost earnings capacity evidence presented by Defendants. At trial, Borrell will present the testimony of an expert economist, while Defendants do not intend to offer any expert testimony on the subject to contradict this testimony. Rather, it appears Defendants' theory is that Borrell did not suffer such harm. There is nothing improper about Borrell's counsel commenting on Defendants' failure to provide any

testimony to challenge the calculations, analysis, and conclusions offered by Borrell's economic expert. Geisinger Defendants' motion to preclude Borrell's counsel from commenting on the evidence, or lack thereof, during closing argument will be denied.

## Conclusion

For the above stated reasons, the motions *in limine* will be granted in part, denied in part, and deferred in part.

An appropriate order follows.


| June 8, 2015 | /s/ A. Richard Caputo |
|---|---|
| Date | A. Richard Caputo |
| | United States District Judge |